# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

―――――――――――

№ 19-CV-0733 (RER)

―――――――――――

THE ANNUITY, WELFARE AND APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 15, 15A, 15C & 15D, AFL-CIO, BY THEIR TRUSTEES JAMES T. CALLAHAN, THOMAS A. CALLAHAN, MICHAEL SALGO AND DENISE M. RICHARDSON; CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, BY ITS CHIEF EXECUTIVE OFFICER MICHAEL A. CRABTREE; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 15, 15A, 15C & 15D, AFL-CIO BY ITS PRESIDENT & BUSINESS MANAGER THOMAS A. CALLAHAN; LEE D. HARRIS,

Plaintiffs,

vs

INTERCOUNTY PAVING ASSOCIATES OF NEW YORK, LLC,

Defendant.

―――――――――――――――――

**MEMORANDUM & ORDER**
November 20, 2020

―――――――――――――――――

RAMON E. REYES, JR., U.S.M.J.:

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15 Trust Funds"), Central Pension Fund of the International Union of Operating Engineers ("CPF"), International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("Local 15"),

1

and Lee Harris (collectively, "Plaintiffs") commenced this action against Intercounty Paving Associates of New York ("Defendant" or "Intercounty Paving") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 *et seq.*, to recover required contributions and dues owed to Plaintiffs Local 15 Trust Funds, CPF, and Local 15 as well as wages owed to Plaintiff Lee Harris. (Dkt. No. 15 ("Am. Compl.") ¶ 1). Plaintiff Lee Harris discontinued his claims after Defendant paid in full the wages owed him. (Dkt. No. 20-1).

Now, Plaintiffs move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on the two remaining causes of action: (1) breach of a collective bargaining agreement ("CBA"), and (2) breach of ERISA obligations. (Dkt. No. 21 ("Mot. for Summ. J.")). Plaintiffs' motion for summary judgment is uncontested by Defendant. For the reasons set forth herein, Plaintiff's motion for summary judgment is granted.[1]

## BACKGROUND[2]

Plaintiffs Local 15 Trust Funds and CPF are multi-employer/employee benefit plans. (Dkt. No. 22 ("Pls. 56.1 Statement") ¶¶ 2, 4). Specifically, Plaintiffs Local 15 Annuity Fund and CPF are employee benefit plans that provide retirement income to eligible participants while Plaintiffs Local 15 Welfare and Apprenticeship Skill Improvement & Safety Funds, are employee welfare

---

[1] The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt. No. 12).

[2] Unless otherwise indicated, the following facts from Plaintiffs' Local Rule 56.1 Statement and supporting materials are undisputed.

benefit plans that provide medical, medical reimbursement, vaccination, and other benefits to eligible participants. (Am. Compl. ¶¶ 6–7, 11).

Plaintiffs Local 15 Trust Funds and CPF are third-party beneficiaries of a CBA ("Local 15/Intercounty Paving Agreement") between Plaintiff Local 15, a labor organization for construction workers in the New York area, and Defendant Intercounty Paving. (Pls. 56.1 Statement ¶¶ 6, 8, 22–23). Defendant is a New York corporation specializing in heavy construction work of roads, streets, bridges, airport runways, and access roads. (Pls. 56.1 Statement. ¶ 9; Am. Compl. ¶ 16; Dkt. No. 16 ("Answer to Am. Compl.") ¶) 16). Defendant's construction work includes each phase of construction from excavation through completion of the project as well as the surveying layout work that accompanies such construction projects. (Pls. 56.1 Statement ¶ 9).

The Local 15/Intercounty Paving Agreement went into effect on June 11, 2003 and "provides the terms and conditions of employment of Defendant Intercounty Paving's employees who perform work falling under the jurisdiction of Local 15." (Pls. 56.1 Statement ¶¶ 8–10). The Local 15/Intercounty Paving Agreement further specifies that Local 15 is also a party to various association CBAs with the General Contractors Association of New York, Inc. ("GCA"). (Pls. 56.1 Statement ¶¶ 12–15). Some of the association CBAs cover heavy construction work for the periods of July 1, 2010 through June 30, 2018 (collectively referred to as the "Local 15-15A/GCA Agreements") while others cover the associated surveying layout work for the periods of July 1, 2010 through June 30, 2022 (collectively referred to as the "Local 15-15D/GCA Agreements"). (Pls. 56.1 Statement ¶¶ 12–13). The Local 15/Intercounty Paving Agreement also binds Defendant to the amendments to the agreements and declarations of trust, which establish the Local 15 Trust Funds. (Pls. 56.1 Statement ¶ 11; Dkt. No. 28-1 ("Local 15/Intercounty Paving Agreement") ¶ 4). Because Defendant is a heavy construction and surveying layout work employer, it is bound by

3

the terms of Local 15's CBAs with the GCA and is thereby required to make several payments, including pension, welfare, vacation, apprenticeship, annuity, dues checkoff, and medical reimbursement account contributions, on behalf of its employees to the Local 15 Trust Funds through the purchase of stamps. (Pls. 56.1 Statement ¶¶ 14–18).

Prior to the commencement of this action, Plaintiffs' auditor conducted an audit of Defendant's payroll records and tax reports covering the period of July 1, 2013 through June 30, 2017. (Pls. 56.1 Statement ¶ 24). The audit resulted in a report identifying deficiencies in contributions owed by Defendant to Plaintiffs on behalf of Local 15, 15A, and 15D represented employees (the "General Deficiency Report"). (Pls. 56.1 Statement ¶ 24; Dkt. No. 28-17 ("General Deficiency Report")). The General Deficiency Report notes the corresponding fringe benefit rates, the contribution rates applicable for each regular, overtime, and double-time hours of work, performed by each of the identified employees represented by Local 15, 15A and Local 15D. (Pls. 56.1 Statement ¶¶ 25–27). The General Deficiency Report indicates Defendant owes ERISA contributions for amounts owed in annuity, pension, welfare, and apprentice/training programs and non-ERISA contributions covering supplemental dues and political action committee payments. (General Deficiency Report at 1–2). Defendant has not paid any portion of the amount owed to Plaintiffs under the General Deficiency Report. (Pls. 56.1 Statement ¶¶ 28–30).

After the commencement of this action, Plaintiffs discovered that Lee and Matthew Harris, two Local 15D members and former surveying employees of Defendant, had not received fringe benefit stamps for the hours they worked nor had Defendant purchased stamps for these hours. (Pls. 56.1 Statement ¶¶ 31–32, 38). All of the work performed by both Lee and Matthew Harris was covered by the Local 15/Intercounty Paving Agreement as well as the Local 15D/GCA Agreements. (Pls. 56.1 Statement ¶ 35). As a result, Plaintiffs' auditor prepared a second report

4

based upon a review of paychecks provided by Lee and Matthew Harris for dates worked between July 1, 2018 and June 30, 2019. (Pls. 56.1 Statement ¶ 33). The second report (the "Revised[3] Harris Deficiency Report") demonstrates a Local 15D deficiency in contributions. (Pls. 56.1 Statement ¶ 33; Dkt. No. 32-1 ("Revised Harris Deficiency Report"))). Defendant has neither paid any of the contributions owed to Plaintiffs nor purchased stamps from Plaintiffs for the hours of surveying layout work identified as deficient in the Harris Deficiency Report. (Pls. 56.1 Statement ¶¶ 37–38).

## **LEGAL STANDARD**

A court may grant summary judgment when the submissions of the parties, including pleadings, discovery, disclosure materials, and affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009). Thus, in order to survive a motion for summary judgment, there must exist (1) a genuine dispute of fact and (2) the disputed fact(s) must be material. *See Anderson*, 477 U.S. at 248; *Spinelli*, 579 F.3d at 166. First, to constitute a "genuine" dispute of fact, the evidence on the record must be such "that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson*, 477 U.S. at 248. Second, a "material" fact is one that "'might affect

---

[3] While this Motion for Summary Judgment was pending, Plaintiffs received partial payment in the amount of $4,324 in unpaid contributions from a surety on one of the projects on which Lee Harris worked. (Dkt. No. 32 ¶ 3). Accordingly, Plaintiffs submitted a revised Harris Deficiency Report and a revised Statement of Damages to reflect the partial payment. (*Id.* ¶ 4). Accordingly, the Court only refers to the revised materials.

the outcome of the suit under the governing law.'" *Spinelli*, 579 F.3d at 166 (quoting *Anderson*, 477 U.S. at 248).

Initially, the moving party "bears the burden of establishing that no genuine issue of material fact exists." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Once the movant has submitted evidence sufficient to support summary judgment, the burden of proof shifts to the nonmoving party to contradict the assertions of the movant by presenting evidence that would enable a reasonable jury to return a verdict in its favor. *Goenaga*, 51 F.3d at 18; *Spinelli*, 579 F.3d at 166. In deciding whether a genuine issue of material fact exists, the court will, however, view the evidence in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all reasonable factual inferences against the movant. *Spinelli*, 579 F.3d at 166 (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)).

## DISCUSSION

### I.    Liability under ERISA and the LMRA

Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Further, Section 301 of the LMRA provides federal jurisdiction for suits involving the "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Plaintiffs allege that Defendant owes both unpaid ERISA contributions pursuant to Section 515 of ERISA and unpaid non-ERISA

contributions under the terms of a CBA established pursuant to Section 301 of the LMRA. (Dkt. No. 29 ("Pls. Mem. Supp. Summ. J.") at 10–11; Pls. 56.1 Statement ¶¶ 24, 33).

In support of their Motion for Summary Judgment, Plaintiffs have submitted an affidavit from a payroll audit manager with the accounting firm hired to perform the audit of Defendant along with the resulting General Deficiency Report and the separately prepared Revised Harris Deficiency Report. (Dkt. Nos. 25, and 28-17, and 32-1). Additionally, Plaintiffs have submitted the CBAs, the relevant trust agreements, and the paycheck stubs underlying the Revised Harris Deficiency Report. (Dkt. Nos. 28-1–28-10, 28-18, and 28-19). As mentioned previously, Defendant does not contest Plaintiff's Motion for Summary Judgment and thus has not challenged the accuracy or legitimacy of Plaintiffs' supporting materials.

Plaintiffs' evidence is sufficient to establish that Defendant was subject to a CBA with Plaintiff Local 15. (*See* Pls. 56.1 Statement ¶ 8). Plaintiffs further established that Defendant failed to remit ERISA contributions as well as non-ERISA payments required under the CBA. Specifically, both the General Deficiency Report and the Revised Harris Deficiency Report are sufficient to establish that Defendant failed to pay the required fringe benefit contributions and to purchase the required stamps for the hours worked by its employees covered by the CBA for the respective time periods. (*See* Pls. 56.1 Statement ¶¶ 24, 28–30, 33, 37–39). Plaintiffs have thereby established that there exists no issue of genuine fact as to Defendant's liability for deficient contributions owed to Plaintiffs under Section 515 of ERISA and Section 301 of the LMRA. *See Trs. of the Local 7 Tile Indus. Welfare Fund v. Titan Interiors, LLC*, No. 12-CV-135 (JG) (SMG), 2015 WL 4509061, at *2 (E.D.N.Y. July 24, 2015) (awarding plaintiff-funds summary judgment

based on plaintiffs' uncontested audit of Defendant's records) (collecting cases). Accordingly, Plaintiffs' Motion for Summary Judgment is granted.

## II.     Damages

Plaintiffs seek to recover: (1) unpaid ERISA and non-ERISA contributions, (2) pre-judgment interest on all unpaid contributions, (3) liquidated damages, (4) attorneys' fees, (5) legal costs, and (6) audit fees. (Dkt. No. 32-2 ("Revised Statement of Damages")). Plaintiffs are entitled to all relief sought. *See* 29 U.S.C. § 1132(g)(2) (stating a successful plaintiff under Section 515 of ERISA is entitled to unpaid contributions, interest on those contributions, liquidated damages, attorney's fees and costs, and "such other legal or equitable relief as the court deems appropriate"); *Mason Tenders Dist. Council Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18 Civ. 3668 (AT), 2020 WL 230603, at *4 (S.D.N.Y. Jan. 14, 2020) (finding award of damages listed in 29 U.S.C. § 1132(g)(2) is mandatory); *Finkel v. Allstar Elec. Corp.*, No. 11-CV-3222 (KAM) (RER), 2013 WL 4806951, at *5 (E.D.N.Y. Sept. 9, 2013) (adopting report and recommendation) (citing *Brown v. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999)) (finding a plaintiff suing for violation of the terms of a CBA is entitled to damages under section 301 of the LMRA).

### A.  Unpaid ERISA and Non-ERISA Contributions

Plaintiffs seek all unpaid contributions owed by Defendant. (Pls. Mem. Supp. Summ. J. at 10–11; Revised Statement of Damages). In support of their request for these contributions, Plaintiffs submitted two different reports produced by an auditing firm that demonstrate all contributions owed by Defendant: (1) the General Deficiency Report and (2) the Revised Harris Deficiency Report. Accompanying the reports, Plaintiffs submitted an affidavit from a payroll audit manager at the auditing firm explaining the calculations underlying the reports. (Dkt. No. 25

8

("Madeiras Aff.")). Both reports substantiate unpaid ERISA contributions required under Section 502(g)(2) of ERISA and non-ERISA contributions owed under the terms of the CBA pursuant to Section 301 of the LMRA.

The General Deficiency Report is based on an audit of Defendant's payroll records, "including NYS-45 Payroll Tax Returns." (Madeiras Aff. ¶ 3). To produce the General Deficiency Report, the number of regular, straight, and overtime hours for which contributions were owed on behalf of Local 15, 15A, and 15D members in Defendant's employ were multiplied by the corresponding fringe benefit rate[4] for each of the 12-month deficient periods at issue. (Madeiras Aff. ¶¶ 3–5). In addition, credit for "fringe benefit stamps purchased but not redeemed by the employees/members" was provided in the calculation. (Madeiras Aff. ¶ 4). The calculations in the General Deficiency Report show that Defendant owes $45,080.83 in ERISA contributions for annuity, pension, welfare (including medical reimbursement and vacation), and apprenticeship/training and $3,541.48 in non-ERISA contributions for political action committee and supplemental dues contributions. (Revised Statement of Damages at 1; General Deficiency Report).

The Revised Harris Deficiency Report details the audit of pay stubs submitted by Lee Harris and Matthew Harris, members of Local 15D. (Madeiras Aff. ¶ 6; Dkt. No. 32 ¶ 4). To calculate the total ERISA and non-ERISA contributions owed on behalf of the two individuals, the regular and overtime hours identified in the pay stubs were multiplied by the Local 15D applicable regular and overtime fringe benefit rates for the audited period. (Madeiras Aff. ¶ 6). The calculations show that Defendant owes $6,187.14 in ERISA contributions and $508.64 in non-

---

[4] Plaintiffs submitted Wage Scale Schedules that detail the applicable fringe benefit rates. (*See* Dkt. Nos. 28-11 ("Local 15, 15A Wage Scale Schedules") and 28-12 ("Local 15D Wage Scale Schedule")).

ERISA contributions under the Revised Harris Deficiency Report. (Revised Statement of Damages at 2; Revised Harris Deficiency Report).

The Court has carefully reviewed Plaintiffs' submissions and calculations regarding the unpaid contributions. The Court finds no error in the General Deficiency Report calculations and the non-ERISA calculations in the Revised Harris Deficiency Report. However, one minor error was found in the calculations of the unpaid ERISA calculations under the Revised Harris Deficiency Report. That calculation includes $9.53 in an "NTF" contribution. (Revised Harris Deficiency Report). However, Plaintiffs are not seeking payment of the "NTF" contribution in connection with this Motion. (Dkt. No. 28 ("Steinberg Aff.") ¶ 9). As such, the unpaid ERISA contributions owed by Defendant under the Revised Harris Deficiency Report amount to $6,177.61.[5] Therefore, in sum, Plaintiffs are entitled to $55,308.56[6] in ERISA and non-ERISA contributions.

B. Interest

Plaintiffs are entitled to interest on both the unpaid ERISA and non-ERISA contributions. Additionally, Plaintiffs are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

i. *Prejudgment Interest on Unpaid ERISA Contributions*

Under ERISA, Plaintiffs are entitled to prejudgment interest on all unpaid ERISA contributions as well as any subsequent interest that accrued between the filing of the complaint and the date of final judgment. *See Finkel*, 2013 WL 4806951, at *6. Section 502(g)(2) of ERISA

---

[5] $6,187.14 - $9.53 = $6,177.61.

[6] $45,080.83 + $3,541.48 + $6,177.61 + $508.64 = $55,308.56.

specifies that, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26," the Internal Revenue Code. 29 U.S.C. U.S.C. § 1132(g)(2).

The trust agreements for Plaintiff Local 15 Trust Funds set the interest rate on unpaid contributions at 6.0% per year.[7] (Pls. Mem. Supp. Summ. J at 12; Dkt. No. 28-7 at 22). The trust agreement for Plaintiff CPF states that interest on unpaid contributions is to be calculated at 9.0% per year.[8] (Pls. Mem. Supp. Summ. J at 12; Dkt. No. 28-10 § 4.5(c)). Plaintiffs Local 15 Trust Funds and CPF seek prejudgment interest on the unpaid ERISA contributions outlined in both the General Deficiency Report and the Revised Harris Deficiency Report at the rates of 6.0% and 9.0% respectively. (Pls. Mem. Supp. Summ. J. at 11–12). Plaintiffs' auditor calculated the interest owed by multiplying the number of days in the deficient period by the respective interest rate, either 6.0% or 9.0%, and then divided that number by 365 days multiplied by the amount owed in ERISA contributions.[9] (Madeiras Aff. ¶¶ 7–9). Applying this formula, the auditor calculated that Defendant owes $10,445.96 in prejudgment interest under the General Deficiency Report through August 30, 2018 and $238.29 in prejudgment interest on the Revised Harris Deficiency Report through January 28, 2020. (Madeiras Aff. ¶¶ 7–9; Revised Statement of Damages).

Plaintiffs request that the same formula be used by the Clerk of the Court in calculating the interest owed for the period of August 31, 2018 through the date of final judgment for the General

---

[7] Plaintiffs Local 15 Trust Funds collect contributions for welfare, annuity, apprentice, MRA, and vacation benefits and therefore, interest on contributions owed in those categories are calculated at 6% per year. (Steinberg Aff. ¶ 8).

[8] Plaintiff CPF ultimately collects the pension contributions and therefore, interest on contributions owed in pension is calculated at 9% per year. (Steinberg Aff. ¶¶ 5, 8).

[9] The formula used to calculate interest is ([number of days] X [interest rate of 0.06 or 0.09]/[365 days]) X [total unpaid ERISA contributions].

Deficiency Report and January 29, 2020 through the date of final judgment for the Revised Harris Deficiency Report. (Pls. Mem. Supp. Summ. J. at 12).

Finding Plaintiffs' methodology and calculations proper,[10] the Court uses Plaintiffs' formula to determine Plaintiffs' interest award on the unpaid ERISA contributions to date—that is, through November 20, 2020. Accordingly, the Court awards Plaintiffs $6,484.69 in interest under the General Deficiency Report and $332.43 in interest under the Revised Harris Deficiency Report. Therefore, in sum, Plaintiffs are entitled to $17,500.39[11] in prejudgment interest on the unpaid ERISA contributions.

### ii.    Prejudgment Interest on Unpaid Non-ERISA Contributions

Under the LMRA, Plaintiffs are also entitled to interest on unpaid non-ERISA contributions pursuant to the terms of the CBA. *See Finkel*, 2013 WL 4806951, at *6. Plaintiffs request that the Court apply a 9.0% interest rate pursuant to Section 5004 of the New York CPLR. (Pls. Mem. Supp. Summ. J. at 19).

In the Second Circuit, an award of interest under the LMRA is left to the discretion of the court. *Annuity, Pension, Welfare & Training Funds Int'l Union Operating Eng'rs Local 14-14B, AFL-CIO v. Superior Site Work, Inc.*, No. 15-CV-543 (MKB), 2017 WL 639248, at *8 (E.D.N.Y Feb. 16, 2017). Here, "[b]ecause Plaintiffs seek to recover the delinquent non-ERISA contributions under the LMRA, which allows them to sue in federal court for breaches of state-law labor

---

[10] While the Court finds Plaintiffs' methodology and calculations proper, an adjustment must be made for the error found in calculating the unpaid ERISA contributions under the Revised Harris Deficiency Report described previously. Plaintiffs' calculation includes $1.00 in interest arising from the "NTF" contribution, (Revised Harris Deficiency Report), which Plaintiffs are not seeking as part of their Motion for Summary Judgment. (Steinberg Aff. ¶ 9). Accordingly, Plaintiffs are awarded $237.29 in interest on the unpaid ERISA contributions under the Revised Harris Deficiency Report.

[11] $6,484.69 + $332.43 + $10,445.96 + $237.29 = $17,500.39.

contracts, the rate under section 5004 is appropriate." *Id*. Further, application of the 9.0% rate to unpaid non-ERISA contributions under section 5004 of the CPLR is the regular practice in the Second Circuit. *Id.* (collecting cases).

The amounts owed in non-ERISA contributions became due at different times. (Pls. Mem. Supp. Summ. J. at 19). Under New York law, where damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Plaintiffs request that interest on the unpaid non-ERISA contributions be calculated from the midpoint dates for each report's deficiency period. (Pls. Mem. Supp. Summ. J. at 19). Using a midpoint date is consistent with the practice of courts in ERISA cases, which "'routinely calculate prejudgment interest from a midpoint date in the delinquency period.'" *See Superior Site Work*, 2017 WL 639248, at *9 (quoting *Alston v. Northstar La Guardia LLC*, No. 10 Civ. 3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 2, 2010)).

Plaintiffs request that interest on the unpaid non-ERISA contributions be calculated from December 31, 2014 for the General Deficiency Report and February 28, 2019 for the Revised Harris Deficiency Report. (Pls. Mem. Supp. Summ. J. at 19). Both dates are the approximate midpoints for the respective delinquency periods and therefore will be used by the Court.

Under the General Deficiency Report, Defendant owes $3,541.48 in non-ERISA contributions. (Revised Statement of Damages at 1; General Deficiency Report at 1–2). Under the Revised Harris Deficiency Report, Defendant owes $508.64 in non-ERISA contributions. (Revised Statement of Damages at 2; Revised Harris Deficiency Report at 1). Using the same formula provided by Plaintiffs to calculate interest on the unpaid ERISA contributions above,

Defendant owes $1,879.22[12] under the General Deficiency Report and $79.26[13] under the Revised Harris Deficiency Report for a total of $1,958.48[14] through November 20, 2020, the date of this Order.

### iii.    *Post-Judgment Interest*

While Plaintiffs do not request post-judgment interest, they are "entitled to post-judgment interest on all money awards as a matter of right" at the rate set out in 28 U.S.C. § 1691. *Trs. of Plumbers Local Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020), *R & R adopted by* 2020 WL 565410 (Feb. 5, 2020). Therefore, Plaintiffs are awarded post-judgment interest on all sums awarded from the date judgment is entered to the date of payment. *Id.*

### C.   Liquidated Damages

Under section 502(g)(2)(C) of ERISA, Plaintiffs are entitled to statutory damages in "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court." 29 U.S.C. § 1132(g)(2)(C). Plaintiffs Local 15 Trust Funds' trust agreements entitle them to liquidated damages equal to ten percent of the amount due in unpaid contributions and Plaintiff CPF's trust agreement permits an assessment of liquidated damages up to twenty percent of the amount owed in unpaid contribution. (Dkt. Nos. 28-7 at 22; 28-8 at 31; 28-9 at 18; and 28-10 §§ 4.5(a) and (e)). Plaintiffs therefore seek liquidated damages equal to ten percent of the total

---

[12] ([2152 days] X [0.09]/[365 days]) X $3,541.48 = $1,879.22

[13] ([632 days] X [0.09]/[365 days]) X $508.64 = $79.26.

[14] $1,879.22 + $79.26 = $1,958.48.

deficient ERISA contributions under both the General Deficiency Report and the Revised Harris Deficiency Report. (Pls. Mem. Supp. Summ. J. at 13). Because an award of liquidated damages is mandatory under Section 502(g)(2) and Plaintiffs seek an amount less than the maximum permitted under the statute, Plaintiffs' request for liquidated damages is granted and Plaintiffs are awarded $4,508.08[15] under the General Deficiency Report and $617.76[16] under the Revised Harris Deficiency Report in liquidated damages for a total of $5,125.84.[17]

D. Attorneys' Fees

Plaintiffs request $11,255.00 in attorneys' fees. (Revised Statement of Damages at 2). Pursuant to Section 502(g)(2)(D) of ERISA, a court must award reasonable attorneys' fees to a successful plaintiff in an ERISA suit. 29 U.S.C. § 1132(g)(2)(C); *see Superior Site Work*, 2017 WL 639248, at *6. The amount awarded, however, is left to the discretion of the court. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds Int'l Union Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utils, Inc.*, 3 F. Supp. 3d 204, 218 (S.D.N.Y. 2014) (quoting *Gesualdi v. RRZ Trucking Co., LLC*, No. 03-CV-3449 (ETB), 2011 WL 1988374, at *7 (E.D.N.Y. May 20, 2011)). In determining an award of reasonable attorneys' fees, courts in the Second Circuit use the "presumptively reasonable fee" method, which considers "what a reasonable client would be willing to pay." *Superior Site Work*, 2017 WL 639248, at *6 (quoting *Trs. of Local 813 Ins. Trust Fund v. Bradley Funeral Serv., Inc.*, No. 11-CV-2885 (ARR) (RLM), 2012 WL 3871759, at *5 (E.D.N.Y. Aug. 10, 2012), *R & R adopted by* 2012 WL 3871755 (Sept. 4, 2012)). The "presumptively reasonable fee" is calculated by multiplying the number of

---

[15] 0.1 X $45,080.93 = $4,508.08.

[16] 0.1 X $6,177.61 = $617.76.

[17] $4,508.08 + $617.76 = $5,125.84.

hours reasonably expended on the litigation by a reasonable hourly rate. *See Superior Site Work*, 2017 WL 639248, at *6. Also relevant to the court's reasonableness determination is consideration of all case specific variables. *See Finkel*, 2013 WL 4806951, at *10*; Superior Site Work*, 2017 WL 639248, at *7. One such variable, called the "forum rule," is consideration of the prevailing rates for similar legal services "by lawyers of reasonably comparable skill, experience, and reputation," within the community in which the district court sits. *Finkel*, 2013 WL 4806951, at *10; *see also Superior Site Work*, 2017 WL 639248, at *6.

When a party seeks reimbursement for attorneys' fees, it must convince the court that the rates and hours are reasonable and are "supported by contemporaneous time records, affidavits, and other materials." *Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. D. Gangi Contracting Corp.*, No. 16-CV-02938 (ARR) (RER), 2017 WL 3447758, at *5 (E.D.N.Y. May 12, 2017), *R & R adopted by* 2017 WL 3432363 (Aug. 9, 2017). Here, Plaintiffs submitted an affidavit from their counsel and contemporaneous time records detailing counsel's work on the case, the date on which the work occurred, and the number of hours expended on such work. (Steinberg Aff.; Dkt. No. 28-22 ("Attorney Time Records")).

Plaintiffs' counsel is a partner at his law firm Brady McGuire & Steinberg, P.C. and has been practicing labor law since 1995. (Steinberg Aff. ¶¶ 1, 11). Plaintiffs' submission shows that Steinberg worked 15.25 hours at an hourly rate of $380 in 2019 and 14 hours at a rate of $390 in

2020. (Attorney Time Records at 3–4). Plaintiffs' counsel explains that his hourly rate was increased from $380 to $390 on January 1, 2020. (Steinberg Aff. ¶ 11).

In total, counsel spent 29.25 hours on this case, a reasonable time expenditure given the amount of documentation Plaintiffs have submitted to the Court and the time spent in conferences, on telephone calls, and in settlement discussions throughout this case. Further, both of Steinberg's hourly rates are reasonable given his experience and when compared to hourly rates within this district. *See Superior Site Work*, 2017 WL 639248, at *7; *see also Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Coop., Pension & Welfare Funds v. Sanders Constr., Inc.*, No. 13-CV-5102 (JFB) (ARL), 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) (finding that an award of attorneys' fees within the range $200 to $400 per hour was appropriate for partners). The hourly rate requested by Plaintiffs is also similar to rates awarded by this court to the same counsel in prior cases. *See Callahan v. Mascarella*, No. 19-CV-1388 (RJD) (CLP), 2020 WL 813502, at *6 (E.D.N.Y. Feb. 19, 2020) (adopting report and recommendation) (finding counsel's hourly rate of $380 reasonable); *Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Coastal Env't Grp., Inc.*, No. 18-CV-5791 (LDH) (SJB), 2019 WL 5693916, at *10 (E.D.N.Y. Aug. 30, 2019) (finding counsel's fee of $370 per hour reasonable). Plaintiffs' request for attorneys' fees in the amount of $11,255 is thereby granted.

E.  Costs

Plaintiffs also seek to recover legal costs in the amount of $400, the cost incurred in filing this lawsuit. (Revised Statement of Damages at 2). Under ERISA a successful plaintiff shall be awarded the "reasonable . . . costs of the action." 29 U.S.C. § 1132(g)(2)(D). A required filing fee

is a reasonable legal cost and thus, Plaintiffs' requested legal costs in the amount of $400 is awarded. *Coastal Env't Grp., Inc.*, 2019 WL 5693916, at *12 (collecting cases).

F.  <u>Audit Fees</u>

Additionally, Plaintiffs seek to recover $14,387.55 "in audit fees incurred as a result of the field audit conducted by the firm retained by Plaintiffs to review the payroll records of Defendant." (Pls. Mem. Supp. Summ. J. at 16). Both ERISA and Plaintiffs' trust agreements provide that Defendant is liable for audit fees if a deficiency in payments is discovered. 29 U.S.C. § 1132(g)(2)(E); (Dkt. Nos. 28-7 at 22; 28-8 at 31; 28-9 at 18; and 28-10 §§ 4.5(a) and (e)). ERISA allows the court to determine whether an award of "other legal or equitable relief" is appropriate. 29 U.S.C. § 1132(g)(2)(E). Courts in the Second Circuit have, "routinely found that audit fees are recoverable under this provision." *Eastport Excavation & Utils, Inc.*, 3 F. Supp. 3d at 220 (collecting cases).

However, a request for audit fees must be supported with records breaking down the auditor's charges and hours expended. *See Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 282 (E.D.N.Y. 2014) (adopting report and recommendation). In support of their request for audit fees, Plaintiffs submitted a breakdown of the hours expended by the employees of the auditing firm and the corresponding payment rates. (Dkt. No. 28-21). Plaintiffs' submissions constitute

adequate proof upon which to award audit fees. *See Finkel*, 2013 WL 4806951, at *6. Plaintiffs are thereby awarded $14,387.55 in audit costs.

## **CONCLUSION**

For the reasons set forth above, the Court grants Plaintiffs' Motion for Summary Judgment and orders Defendant to pay Plaintiffs the following:

(1) $55,308.56 in all unpaid ERISA and non-ERISA contributions;

(2) $17,500.39 in prejudgment interest on all unpaid ERISA contributions;

(3) $1,958.48 in prejudgment interest on all unpaid non-ERISA contributions;

(4) $5,125.84 in liquidated damages;

(5) $11,255 in attorneys' fees;

(6) $400 in legal costs;

(7) $14,387.55 in audit fees; and

(8) Post-judgment interest on the entire monetary award at the rate set out in 28 U.S.C. § 1961.

SO ORDERED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.

United States Magistrate Judge

Dated: November 20, 2020

Brooklyn, NY